**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**NORTHERN DIVISION**

ROBERT OWCZARZAK,

      Plaintiff,                                   Case Number 10-12835

v.                                                    Honorable Thomas L. Ludington

ST. MARY'S OF MICHIGAN,

      Defendant.

_____/

**OPINION AND ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY
JUDGMENT, DECLINING JURISDICTION OVER PLAINTIFF'S STATE LAW
CLAIM, AND CANCELING HEARING**

On July 19, 2010, Plaintiff Robert Owczarzak filed a complaint against St. Mary's of
Michigan ("St. Mary's" or "Defendant"), alleging that his employment as a registered nurse ("RN")
was wrongfully terminated on the basis of his gender in violation Title VII of the Civil Rights Act
of 1964 and Michigan's Elliot Larsen Civil Rights Act (the "ELCRA"). Defendant filed a motion
for summary judgment on May 26, 2011. ECF No. 9. Defendant argues that Plaintiff cannot
establish a prima facie case of reverse sex discrimination because he cannot establish that St. Mary's
is the "unusual employer" who discriminates against the majority, that he met St. Mary's reasonable
expectations, or that a similarly situated person not in the protected class was treated more
favorably. Plaintiff filed a response on June 16, 2011, contending that he has sufficient evidence that
St. Mary's discriminated against him based on his gender and that St. Mary's proffered reasons for
termination of his employment are pretextual in nature. ECF No. 11. Defendant filed a reply on June
30, 2011. ECF No. 12.

The Court has reviewed the parties' submissions and finds that the facts and the law have
been sufficiently set forth in the motion papers. The Court concludes that oral argument will not aid

in the disposition of the motion.  Accordingly, it is **ORDERED** that the motion be decided on the papers submitted.  E.D. Mich. LR 7.1(f)(2).  For the reasons provided herein, the Court will grant Defendant's motion for summary judgment on Plaintiff's Title VII claim and decline jurisdiction over Plaintiff's state law claim.

## I.    Facts

Plaintiff was hired by St. Mary's as an "at will" RN on August 11, 2000. During the course of Plaintiffs employment with St. Mary's he worked in the Sixth Floor Intensive Care Unit and in the Emergency Department. He was a RN in the Emergency Department at the time his employment was terminated. While employed in the Emergency Department, Plaintiff was supervised by male Nurse Manager Shane Hunt.  Plaintiff's performance was consistently scored higher than the score of 300 required for a passing evaluation. ECF No. 11 Ex. 2 at 17-19.

When Plaintiff began his employment at St. Mary's he was provided a copy of St. Mary's Associate Handbook that contains an Equal Employment Opportunity policy which includes a policy against harassment and discrimination.  The Handbook also outlines various unacceptable employee conduct for which discipline may result, up to and including discharge. This misconduct includes, but is not limited to, "(1) (use of) inappropriate conduct or language . . . (3) failure to notify manager of absence or tardiness.  ECF No. 9 Ex. B at 44-45. St. Mary's also uses progressive discipline to allow employees to recognize and correct lesser misconduct and prevent further discipline or termination. Plaintiff acknowledged in writing his awareness of St. Mary's policies and his agreement to abide by those standards of conduct as a condition of employment. ECF No. 9 Ex. B at 36

Plaintiff received a verbal reprimand for excessive absenteeism in violation of St. Mary's

policies on July 12, 2011.  Plaintiff continued to have attendance problems, resulting in his August 15, 2011 Performance Improvement Plan ("PIP").  The PIP stated that Plaintiff needed to "(1) attend & enter all mandatory competencies (2) assist in [] critical care LOS by early identification of potential trach . . . pts and early proactive discharge planning (3) follow care management model as it was intended including goal of shift delegation follow-up notes (4) attend an educational program that will enlarge clinical practice (5) continue to maintain calm professional environment. ECF No. 9 Ex. B at 33-34.  Plaintiff received a subsequent reprimand for excessive absenteeism, which noted that "further call ins before January 17, 2002, will result in suspension."  ECF No. 9 Ex. B at 30.  Plaintiff did not have any additional call-in absences before January 17, 2002, but did receive three medication documentation discrepancies for incidents that occurred on January 4, February 22, and February 25, 2002 involving the drugs Dilaudid, Vicodin, and Phenergan.

     On March 4 and 5, 2002, Plaintiff again was absent from work resulting in another written reprimand for excessive absenteeism. The written reprimand provided that "any additional absen[ces] from work prior to May 21 [2002] will result in suspension without pay." ECF No. 9 Ex. B at 29. Plaintiff's attendance then improved. On September 10, 2002, however, he was reported as engaging in unprofessional conduct by coming "into work with a very bad attitude like always. He was very upset about going to Court, was yelling at patients while saying I'm gonna find another job this is bullshit . . . he said to write it up and I don't give a shit . .  losing it and ranting and raving at night . . . patient in ward said always yelling and loud and he scares me." ECF No. 9 Ex. B at 28-29.

     Plaintiff received his third written reprimand for excessive absenteeism on October 23, 2002 and his attendance again improved in 2003.  ECF Ex. B at 26.  In 2004, Plaintiff's attendance

problems resumed. As of November 9, 2004, Plaintiff had a total of nine unauthorized absences which is a terminable offense under St. Mary's Abseentism Policy. ECF No. 9 Ex B. at 25, 47. St. Mary's, however, elected to give Plaintiff a fourth written reprimand in lieu of termination. Plaintiff's absences continued and on December 8, 2004, he was given a fifth written reprimand for an additional eight unauthorized absences. ECF No. 9 Ex. B at 24. St. Mary's again decided not to terminate Plaintiff's employment but instead elected to re-educate Plaintiff on St. Mary's Abseentism Policy. In an attempt to change Plaintiff's misbehavior, St. Mary's re-educated Plaintiff and had him acknowledge in writing St. Mary's Absenteeism Policy. *Id.*

On April 4, 2005, Plaintiff received a second verbal warning for six unauthorized absences that occurred between June 13, 2004 and April 1, 2005. ECF No. 9 Ex. B at 23.  Plaintiff received a third documented verbal warning for six unauthorized absences that occurred between July 3, 2004 and June 17, 2005. ECF No. 9 Ex. B at 22. St. Mary's corrective action was to provide Plaintiff with job responsibility counseling and a fourth verbal warning for unauthorized absence on July 20, 2005. ECF No. 9 Ex. B at 20.  Plaintiff then received a sixth written warning on February 10, 2006 for absenteeism, a two-shift suspension on February 10, 2006 for abseenteeism, a documented suspension on May 3, 2006 for absenteeism, and a fifth verbal warning for tardiness on May 22, 2006. ECF No. 9 Ex. B at 15-18.

On June 7, 2006, Plaintiff was absent from work without authorization for the ninth time that year.  St. Mary's again elected not to terminate Plaintiff's employment and gave him "one  more chance to improve [his] attendance."  ECF No. 9 Ex. B at 14.  Plaintiff was given a "Last Chance Agreement ("LCA"), which he signed on June 8, 2006. *Id.* The LCA stated:

> Under the terms of the LCA, you may incur no more than one (1) unscheduled absence for a period of six (6) months from the date of this agreement or until

> December 7, 2006 or your employment will be terminated. . . After the expiration
> and satisfactory completion of this six (6) month period, you must report any
> occurrence of absence to your manager or the manager's designee in accordance with
> the Division of Nursing call-in policy . . . ."

*Id.* Plaintiff did not have any unauthorized absences during the period covered by the LCA but was

absent without authorization the day after he completed the terms of his LCA. Plaintiff received a

written reprimand for excessive absenteeism on December 18, 2006. ECF No. 9 Ex. B at 13.

Plaintiff subsequently received a sixth verbal warning on February 20, 2007 for absenteeism, a

seventh verbal warning on August 21, 2007, for absenteeism, a suspension corrective action for

absenteeism on January 10, 2008, an eighth verbal warning on May 2, 2008 for absenteeism, an

eighth written warning on May 27, 2008 for absenteeism, and a ninth verbal warning on October 16,

2008 for absenteeism. ECF No. 9 Ex. B at 4-12. Plaintiff also had three documented instances of

inappropriate behavior and poor job performance on August 12, 2007, February 5, 2008 and

November 8, 2008. ECF No. 9 Ex. B at 3, 8, 10.

On December 31, 2008, Plaintiff was involved in a series of interactions that St. Mary's

described as "intimidating and coercive behavior" while using obscene and abusive language

towards coworkers. The interactions were described by the co-staff members as follows:

- Plaintiff exploded at triage nurse, Mamie Caballero, RN, immediately after she placed a suicidal patient into Room 12. Per Hospital policy at the time, this was the only room that this suicidal patient could be placed into. Plaintiff, while pointing his finger in Ms. Cabellero's face, loudly exclaimed "I have admitted 12 mother fuc*ing patients today and you didn't have to put another patient in my room." When Ms. Cabellero told him that he did not need to speak to her that way and that she was going to write him up, Plaintiff yelled "fuc*ing write me up, go for it, fuc*ing try it, don't bother me any. Plaintiff then stormed down the hall in front of numerous other staff members, patients, and patient's families.

- Aaron Brown, a flight care EMT, witnessed Plaintiffs misconduct, including throwing property, that he described as a melt-down, "off the wall" and as so extreme that Mr. Brown felt he had to stay in the emergency department because he

was fearful of what Plaintiff would do next.

- Plaintiff yelled at Meaghen Grandy, Emergency Room Technician, "What are you doing? Don't be moving my patients in the god damn hall just because you need room for someone else. No one is going to move my fuc*ing patients out of my rooms."

- Plaintiff came charging out of a patient's room to confront Ms. Grandy yelling "thanks for putting my fuc*ing patient into seizure precautions Meaghen I guess I just have to do everything my fuc*ing self since the techs are fuc*ing useless." Plaintiff then proceeded to tell Ms. Grandy that he was going to be sure to let Mr. Hunt know and that she would be "dealt with." This confrontation between Plaintiff and Ms. Grandy was witnessed by both patients and co-workers.

ECF No. 9 at 19. Ms. Gandy and Ms. Caballero filed abuse/assault incident reports with St. Mary's management based on Plaintiff's conduct. Melissa Cummer, a Registered Nurse, also complained about Plaintiff's inappropriate behavior that day. Plaintiff's misconduct, however, was not limited to interactions with co-workers. Plaintiff was witnessed forcefully pushing an elderly, eighty-pound patient's legs causing her to hit her head and both knees on the side rail of her bed. On January 2, 2009, a paralyzed patient filed a complaint about receiving unprofessional treatment from Plaintiff in St. Mary's emergency department.

As a result of the complaints about Plaintiff's poor performance and disruptive behavior on December 31, 2008, Plaintiff s Supervisor, Mr. Hunt, interviewed Plaintiff, the complainants, and witnesses. Stephanie Peters from St. Mary's Human Resources Department assisted with the investigation. On January 6, 2009, Mr. Hunt and Ms. Peters interviewed Plaintiff to obtain his version of the events and asked Plaintiff to provide a written account of his events. Following his interview, Plaintiff was placed on administrative leave while Mr. Hunt continued to investigate. As a result of the investigation, Mr. Hunt concluded that it was necessary to terminate Plaintiff's employment. Ms. Peters and Sharon Marx, the Director of Patient Care Services who oversees the

Emergency Department, approved Mr. Hunt's decision to terminate Plaintiff's employment.

On January 8, 2009, Plaintiff met with Mr. Hunt and Ms. Peters. Plaintiff gave Mr. Hunt a written document detailing his version of the events which Mr. Hunt reviewed before the meeting commenced. In his version, Plaintiff admitted, "I guess fuck you came out" when speaking to Ms. Caballero on December 31, 2008. Plaintiff later testified that he stated "what the fuck?" in front of another nurse.  The other nurse then told those in the immediate area aware of what Plaintiff said. Mr. Hunt informed Plaintiff that his employment was being terminated for misconduct in violation of St. Mary's policies. Plaintiff's final notice of corrective action that he received at the meeting described his termination for "intimidating and coercive behavior" in a patient care area towards staff members and inappropriate behavior including the use of obscene language and/or abusive language witnessed by patients. ECF No. 9 at 10.  Plaintiff inquired why he was not given any anger management counseling as he believed that approximately ten female nurses were given anger management counseling as opposed to termination after using profanity. Plaintiff did not receive a response other than Mr. Hunt acknowledging that there had not been any problems with his nursing skills.

Plaintiff testified that he had trouble locating subsequent employment for months because the Saginaw area hospitals "wouldn't talk to him for some reason." ECF No. 9 Ex. A at 8.  Plaintiff was, however, offered a full-time nursing position with full benefits at Saginaw Covenant Hospital within a month after his employment was terminated at St. Mary's. *Id.* at 95-96. Covenant withdrew its offer of employment after Plaintiff tested positive for marijuana.  A year later, after Plaintiff passed another drug test, Plaintiff was hired by Covenant.

## II.    Standard of Review

A motion for summary judgment should be granted if the movant shows that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  A party asserting that a fact cannot be proven or is genuinely disputed must support the assertion by "showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1)(B).  The party seeking summary judgment has the initial burden of informing the Court of the basis for its motion, and identifying where to look in the record for relevant facts "which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  The burden then shifts to the opposing party who must "set out specific facts showing a genuine issue for trial." Fed. R. Civ. Pro. 56(e)(2); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986).  If the opposing party fails to raise genuine issues of fact and the record indicates the moving party is entitled to judgment as a matter of law, the court shall grant summary judgment. *Anderson*, 477 U.S. at 250.

The court must view the evidence and draw all reasonable inferences in favor of the non-moving party and determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 251-52.  The party opposing the motion may not "rely on the hope that the trier of fact will disbelieve the movant's denial of a disputed fact" but must make an affirmative showing with proper evidence in order to defeat the motion. *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479 (6th Cir. 1989).  A party opposing a motion for summary judgment must designate specific facts in affidavits, depositions, or other factual material showing "evidence on which the

-8-

jury could reasonably find for the plaintiff." *Anderson*, 477 U.S. at 252. The application of Rule 56 extends to employment-related cases, and courts have granted summary judgment for employers in disability discrimination and retaliation cases. *See e.g. Walsh v. United Parcel Serv.*, 201 F.3d 718, 724 (6th Cir. 2000) (affirming summary judgment on a disability claim); *Canita v. Yellow Freight System, Inc.*, 903 F.2d 1064 (6th Cir. 1990) (affirming summary judgment on a retaliation claim).

### III.    Discussion

#### A.    Plaintiff's Prima Facie Case of Reverse Sex Discrimination

Title VII prohibits an employer from discriminating against an employee on the basis of an employee's sex. 42 U.S.C. § 2000e-2(a)(1). In Title VII cases, the federal courts have utilized the burden-shifting framework set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-05 (1973). Typically, a plaintiff may avail himself of a rebuttable presumption of discrimination by introducing evidence that he was (1) a member of a protected class; (2) subject to an adverse employment action; (3) qualified for the position; and (4) was replaced by a person outside the protected class or treated differently than similarly situated non-protected employees. *White v. Baxter Healthcare Corp.*, 533 F.3d 381, 391 (6th Cir. 2008).

However, the first element of the prima facie case is modified in reverse discrimination claims. *Murray v. Thistledown Racing Club, Inc.*, 770 F.2d 63, 67 (6th Cir. 1985). A " 'reverse discrimination' complainant bears the burden of demonstrating that he was intentionally discriminated against 'despite his majority status.' " *Id.* at 67. Accordingly, the first prong of the prima facie case "is established upon a showing that 'background circumstances support the suspicion that the defendant is that unusual employer who discriminates against the majority,' and upon a showing that the employer treated differently employees who were similarly situated but not

members of the protected group." *Id.*

### 1.   First Prima Facie Element

Defendant contends that, in the instant case, Plaintiff cannot satisfy the first prong of the prima facie test for a reverse discrimination claim since St. Mary's is not the unusual employer who discriminates against the majority. With respect to the first required element, the Sixth Circuit has not developed a bright line test for what constitutes "background circumstances" in a reverse discrimination case. However, Defendant notes that in *Zambetti v Cuyahoga Cmty. College*, 314 F.3d 249 (6th Cir. 2002), the Sixth Circuit found background circumstances sufficient to establish a prima facie case of reverse discrimination where the plaintiff was white and the person in charge of hiring was African-American. Similarly, in *Plumb v. Potter*, 2005 U.S. Dist. LEXIS 24553 (E.D. Mich. 2005), the court found background circumstances were sufficient to establish the first required prima facie element of a reverse discrimination failure-to-promote case where the plaintiff was male and a female was responsible for plaintiff's promotion. Defendant contends that Plaintiff might establish "background circumstances" to demonstrate that St. Mary's is that unusual employer who discriminates against the majority if he is able to demonstrate that the person in charge of terminating his employment in January 2009 was a female. In this case, all the discipline that Plaintiff received from January 10, 2008, until his termination on January 8, 2009, was the result of decisions by his male Nurse Manager, Mr. Hunt. Thus, Defendant argues that Plaintiff is unable to prove the first prima facie element of a reverse discrimination claim under Title VII.

Plaintiff responds that Defendant incorrectly limits the application of the "background circumstances" analysis to the gender of his supervisor which ignores its own acknowledgment that there is no bright line rule in this circuit. Additionally, "[t]he composition of the workforce" as well

as "the sex of the plaintiff's supervisor [have been] held to constitute sufficient background circumstances to satisfy the first prong of the *McDonnel Douglas* test" in *Turner v. Grande Pointe Healthcare Community*, 2007 WL 2601386 (N.D. Ohio Sept. 10, 2007), a reverse gender discrimination case." *DeBiasi v. Charter County of Wayne*, 537 F. Supp. 2d 903, 917 (E.D. Mich. 2008). The Sixth Circuit has also looked to statistical evidence to demonstrate that the employer considered race in making employment decisions. *See Sutherland v. Mich. Dep't of Treasury*, 344 F.3d 603 (6th Cir. 2003); *but see Rivette v. United States Postal Service*, 625 F. Supp. 768 (E.D. Mich. 1986) (finding that there was no evidence that race was contemplated in decision making because there was no evidence that the decision-makers were aware of any racial problems at the facility).

Plaintiff contends that the composition of the workforce in the instant case is relevant, as is the fact that the witnesses relied upon in the investigation leading to Plaintiff's termination were female. Plaintiff also emphasizes that he is aware of ten females that used profanity or obscene language in the workplace, either in front of other employees or patients, but were given the opportunity to attend anger management classes to avoid termination. Plaintiff submits that this constitutes sufficient "background circumstances" supporting the conclusion that Defendant is an unusual employer that discriminates against the majority.

In reply, Defendant argues that composition of the workforce, standing alone, is insufficient evidence of St. Mary's being the unusual employer who discriminates against the majority. In *Turner* the composition of the workforce *and* the sex of the plaintiff's supervisor were held to constitute sufficient evidence. Similarly, in *DeBiasi*, the court found that the ten years of statistical evidence of the applicant's gender/race and the supervisor's gender/race raised a question of fact.

-11-

Similarly, in *Sutherland*, valid statistical data created a question of racial bias. In the present case, the decision-maker, Mr. Hunt is male and Plaintiff has presented no valid statistical evidence of discrimination. For statistics to be valid in a discrimination case, "both the methodology and the explanatory power of the statistical analysis must be sufficient to permit an inference of discrimination." *Simpson v. Midland-Ross Corp.*, 823 F.2d 937, 944 (6th Cir.1987). Plaintiff has not presented any expert statistical testimony or standard-deviation methodology to support evidence of St. Mary's discriminating against the majority. Employee statistics unaccompanied by evidence regarding specific relevant factors lack probative value. *See Grano v. Dept. of Dev. of City of Columbus*, 637 F.2d 1073, 1078 (6th Cir. 1980). Plaintiff is thus unable to prove the first prima facie element of a reverse discrimination claim under Title VII.

Plaintiff, in summary, has not established that St. Mary's is the unusual employer that discriminates against the majority. Plaintiff alleges that ten females were offered anger management after using obscene language in lieu of termination but St. Mary's has also noted that three male nurses were provided anger management classes as well. The fact that the workforce and the witnesses to the incident resulting in Plaintiff's termination were predominantly female, standing alone, is insufficient evidence to establish the first prong of the prima facie case. Moreover, Plaintiff's supervisor is male, one of the witnesses to the incident is male, and three male nurses were provided anger management classes after using obscene language in lieu of termination. Plaintiff has not offered any additional statistical evidence to permit an inference of discrimination. There is nothing in the record to suggest that St. Mary's discriminates against the majority in this case and Defendant's motion for summary judgment will be granted.

## 2.   Third Prima Facie Element

Defendant also contends that Plaintiff cannot establish the third element of the prima facie case for discrimination under the *McDonnell Douglass* standard because he was not qualified for his position as an emergency department registered nurse. *See Ang v. Proctor & Gamble Co.*, 932 F.2d 540, 548-49 (6th Cir. 1991) (employee did not show prima facie case when he was not performing to his employer's satisfaction); *McDonald v. Union Camp Corp*, 898 F. 2d 1155, 1160 (6th Cir. 1990) (employee "must prove that he was performing his job at a level which met his employer's legitimate expectations"). In this case, Plaintiff committed repeated violations of St. Mary's established rules of conduct, even after being counseled about his poor work performance which demonstrates that he did not meet reasonable job expectations. Since he was not meeting expectations, as required by the third prong of the *McDonnell Douglas* formula, Defendant submits that he cannot establish a prima facie case of sex discrimination under either Title VII or the ELCRA.

Plaintiff emphasizes that there is no evidence to suggest that he was not adequately performing his job responsibilities as a nurse, as his clinical skills were "not at issue" in his termination.  ECF No. 11 Ex. 5 at 19.  Plaintiff does not address Defendant's argument that he was not meeting expectations because of his violations of St. Mary's established rules of conduct.

Although Plaintiff was adequately qualified with respect to his clinical skills, his disciplinary record reflects that he was not meeting St. Mary's reasonable expectations, especially with respect to his attendance. St. Mary's provided Plaintiff with its rules of conduct and offered him counseling in order to correct his behavioral deficiencies, which proved unsuccessful. Because Plaintiff is unable to meet the third element of the prima facie case for discrimination, Defendant's motion for

-13-

summary judgment will be granted.

### 3.    Fourth Prima Facie Element

Defendants also contend that, even if it is assumed that St. Mary's was the unusual employer who discriminates against the majority and that Plaintiff was qualified, he still cannot establish a prima facie case of sex discrimination as he is unable to establish that he was treated differently than similarly situated female employees under the same circumstances. "To be deemed 'similarly situated,' [the] individuals with whom [Plaintiff] seeks to compare his treatment must have dealt with the same supervisor, have been subject to the same standards and have engaged in the same conduct without such differentiating or mitigating circumstances that would distinguish their conduct or the employer's treatment of them for it." *Mitchell v. Toledo Hosp.*, 964 F.2d 577 (6th Cir. 1992); *see also Noble v. Brinker Int'l, Inc.*, 391 F.3d 715, 729 (6th Cir. 2004). Therefore, Plaintiff would have to compare himself to a female Emergency Room RN who reported to the same supervisor, Mr. Hunt, and who engaged in the same misconduct that he engaged in and who was not terminated. Specifically, Defendant contends that Plaintiff would have to compare himself to a female Emergency Room RN who had engaged in the misconduct outlined in the factual portion of this opinion.

As evidence to satisfy the fourth prong of a prima facie case, Plaintiff has identified several female RNs as having been treated more favorably for similar misconduct.[1] Specifically, Plaintiff contends that these individuals were treated differently because they participated in anger management for using profanity in the workplace and he was not afforded the same treatment. Of

---

[1] Plaintiff, however, also identified several male employees at St. Mary's who were offered anger management, which Defendant contends militates against his argument that men were somehow singled out and discriminated against.

-14-

each of the allegedly similarly situation employees, only one was supervised by Plaintiff's supervisors, Mr. Hunt.  Plaintiff also has not offered any evidence to establish that this individual, Ms. Brown, engaged in the same conduct as Plaintiff without any differentiating or mitigating circumstances.  Defendant notes that Ms. Brown did not engage in intimidating and coercive misconduct which caused emergency room staff to be fearful of her and to file formal abuse/assault complaints. Ms. Brown instead acknowledged responsibility for her actions and changed her behavior. ECF No. 9 Ex. F. Defendant contends that Plaintiff's conclusory allegations and subjective beliefs are "wholly insufficient evidence to establish a claim of discrimination as a matter of law." *Mitchell* at 585. Instead, Defendant contends that there is no alleged "comparable" employee who engaged the same misconduct and was not terminated, and St. Mary's is entitled to summary judgment.

Plaintiff responds that he need not be similarly situation in all respects to an employee outside his protected class, but is required to prove that all of the relevant aspects of his employment situation were 'nearly identical' to those of [the non-minority's] employment situation." *Pierce v. Commonwealth Life Ins. Co.*, 40 F.3d 796, 802 (6th Cir. 1994). Plaintiff emphasizes that Defendant did not rely upon his discipline history in deciding to terminate Plaintiff's employment and Plaintiff's discipline history is thus irrelevant to the instant analysis. Plaintiff contends that the relevant aspects of his employment include the following factors of comparison: (1) whether the employee worked as a nurse; (2) whether the employee used profanity in the workplace in front of co-workers or patients; (3) whether Defendant offered the employee an opportunity to take anger management classes in lieu of termination; and (4) whether Defendant terminated the employee for using profane language in the workplace. Plaintiff worked as a nurse and allegedly used profane

language in front of other co-workers; however, Defendant failed to offer Plaintiff any opportunity to take anger management classes. Moreover, Defendant ignored Plaintiff's requests that he be offered such an option. Plaintiff contends that Defendant's lack of guidance on how to decide which employees can take anger management classes evidences that Defendant has disparately treated Plaintiff by providing an additional benefit to female employees. Defendant requests that the Court decline to implement the factors that Plaintiff has proffered, without citation to legal authority, because the factors ignore established precedent.

Plaintiff's view of a "similarly situated" individual is too narrow. He does not acknowledge that he has not identified any individuals who similarly engaged in intimidating and coercive behavior towards other staff members; Plaintiff focuses only on the use of profanity in the workplace which was not the sole basis for termination of his employment. The fact that St. Mary's has offered anger management classes to both male and female nurses—whether dealing with the same supervisor or another supervisor—for using profane language in the workplace is thus insufficient to establish that Plaintiff was treated differently than similarly situated female employees under the same circumstances.

**B.    St. Mary's Legitimate, Non-discriminatory Reason for Plaintiff's Termination**

If Plaintiff were able to meet his burden to establish a prima facie case of reverse sex discrimination, the burden would then shift to St. Mary's to determine a legitimate, non-discriminatory reason for terminating Plaintiff's employment. *Abdulnour v. Campbell Soup Supply Co.*, 502 F.3d 496, 502 (6th Cir. 2007). Defendant emphasizes that the same reasons that support its contention that Plaintiff was not meeting its reasonable expectations also provide a legitimate, non-discriminatory business reason for terminating his employment.

-16-

More specifically, Defendant emphasizes its unusual efforts, including verbal warnings, written warnings, suspensions, the last chance agreement, and the PIPs prior to terminating Plaintiff's employment.  When determining whether an employment decision is legitimate and non-discriminatory, courts must not analyze the soundness of that decision or second guess whether the employment decision was "wide, shrewd, prudent, or competent." *Cooper v. City of North Olmsted*, 795 F.2d 1265,1271-72 (6th Cir. 1986) ("[t]he court should not put itself in a position of judging the correctness of the defendant's action in discharging plaintiff); *Chappell v. GTE Products Corp.*, 803 F.2d 261, 266 (6th Cir. 1986), *cert. denied*, 480 U.S. 919 (1987).

Courts have determined that a termination due to poor job performance is a legitimate defense to a discrimination claim, and Defendant argues that Plaintiff's misconduct provides St. Mary's with a legitimate, nondiscriminatory reason for his termination based on his inappropriate and unprofessional misconduct. *See Danielson v. City of Lorrain*, 938 F. 2d 681 (6th Cir. 1991) ("Workers who poorly perform their jobs will not be insulated from dismissal simply because they are members of [a] protected ... group."). St. Mary's emphasizes that it demonstrated a great deal of patience with Plaintiff's lengthy and documented disciplinary history until Plaintiff escalated his misconduct to cause his co-workers to feel threatened.  Indeed, the record corroborates Defendant's assertion that it had a legitimate, nondiscriminatory reason for Plaintiff's termination based on the December 31, 2008 incident where Plaintiff used obscene language in the workplace and engaged in intimidating and coercive behavior towards other staff members. Defendant also references Plaintiff's disciplinary history as a reason for his termination, but these reasons were not cited in Plaintiff's notice of termination.

**C.    Plaintiff's Contention that St. Mary's Reason for His Termination is Mere Pretext**

Because St. Mary's has demonstrated legitimate, non-discriminatory reasons for Plaintiffs termination, Plaintiff has the burden to establish that the Hospital's proffered reasons are mere pretext. *Anthony v. BTRAuto. Sealing Sys., Inc*., 339 F.3d 506,515 (6th Cir. 2003). In the Sixth Circuit, "a plaintiff can show pretext in three interrelated ways: (1) that the proffered reasons had no basis in fact, (2) that the proffered reasons did not actually motivate the employer's action, or (3) that they were insufficient to motivate the employer's action." *Chen v. Dow Chem. Co.*, 580 F.3d 394, 400 (6th Cir. 2009). To avoid summary judgment, Plaintiff "must produce sufficient evidence from which a jury could reasonably reject St. Mary's explanation of why it fired [him]." *Id.* The question for courts when evaluating claims of alleged pretext "is always whether the employer made up its stated reason to conceal intentional [discrimination]." *Id.* at 400 n.4.

"[A]s long as an employer has an honest belief in its proffered non-discriminatory reason for discharging an employee, the employee cannot establish that the reason was pretextual simply because it is ultimately shown to be incorrect." *Majewski v. Automatic Data Processing, Inc*., 274 F.3d 1106, 1117 (6th Cir. 2001); *Joostberns v. United Parcel Servs., Inc*., 166 F. App'x 783 (6th Cir. 2006). In other words, "when an employer reasonably and honestly relies on particularized facts in making an employment decision, it is entitled to summary judgment on pretext even if its conclusion is later shown to be mistaken, foolish, trivial, or baseless." *Chen*, 580 F.3d at 401 (quotation omitted). Thus, "[a]n employee's opinion that he did not perform poorly is irrelevant to establishing pretext where the employer reasonably relied on specific facts before it indicating that the employee's performance was poor." *Stockman v. Oakcrest Dental Ctr., P.C.*, 480 F.3d 791, 802 (6th Cir. 2007); *see also Hendrick v. W. Reserve Care Sys.,* 355 F.3d 444, 462 (6th Cir. 2004) (the role

-18-

of the Court is "not to act as a 'super personnel department' that second guesses employers' business judgments.").

Here, Defendant contends that it made a reasonably informed decision as to the emergency department staff's complaints of Plaintiff's extreme misconduct. Plaintiff responds that Defendant's legitimate, nondiscriminatory reason for terminating his employment is "unworthy of credence." *Cline v. Catholic Diocese of Toledo*, 206 F.3d 651, 658 (6th Cir. 2000). In other words, Plaintiff contends that he is able to demonstrate that "discrimination was a motivating factor for the adverse action taken by the employer toward the plaintiff." *Lytle v. Malady*, 458 Mich. 153, 176 (1998). "The proofs offered in support of the prima facie case may be sufficient to create a triable issue of fact that the employer's state reason is a pretext, as long as the evidence would enable a reasonable factfinder to infer that the employer's decision had a discriminatory basis." *Town v. Mich. Bell Tel. Co.*, 455 Mich. 688, 697 (1997).

Plaintiff first emphasizes that Defendant's explanation of its legitimate, nondiscriminatory reason for terminating Plaintiff's employment ignores that it did not rely on Plaintiff's prior discipline history as the basis for his termination. The Sixth Circuit has found that when defendants change the explanation or provide inconsistent reasons, it constitutes evidence of pretext. *See Chichewivz v. UNOVA Indus. Auto. Sys., Inc.*, 92 F. App'x 215, 220 (6th Cir. 2004)( "evidence of pretext may consist of a defendant's changing explanations"); *Fox v. Certainteed Corp.*, 198 F.3d 245, 1999 WL 1111495, at *5 (6th Cir. 1999) (noting that evidence demonstrating inconsistency in the employer's explanations for the plaintiff's discharge may raise an inference of pretext).

Plaintiff contends that Defendant's attempt to bolster its case by modifying the reasons it proffered for Plaintiff's termination is evidence of pretext. Defendant did not base its decision on

Plaintiff discipline history in its Notice of Termination. Additionally, Defendant's agents testified that Plaintiff's job performance was not a basis for his termination. Plaintiff asserts that he may now rely on Defendant's changing its reasons for termination and, hence, providing inconsistence proffered reasons as evidence of pretext.

Plaintiff's Notice of Termination stated that his employment was terminated because of "(1) Inappropriate behavior in a patient care area, use of obscene language and/or abusive language witnessed by patients and staff members; and (2) Intimidating and coercive behavior in the patient care area towards staff members." ECF No. 11 Ex. 3. Defendant does not rely on these reasons in articulating its legitimate, non-discriminatory reason for terminating Plaintiff's employment.

Additional evidence of pretext includes the fact that Defendant did not consider Plaintiff's version of the relevant events before terminating his employment. Instead, Defendant relied solely upon the complaints of the female nurses reporting Plaintiff which does not comport with Ms. Marx's testimony that she would expect the investigator to ask the accused employee for his version of events and that getting both sides of the story fit with St. Mary's values. ECF No. 11 Ex. 2 at 6. This, according to Plaintiff, demonstrates Defendant's indifference in discovering the full version of the incident and it relied only upon the females' accusations.

Plaintiff also argues that in deciding not to offer Plaintiff anger management classes in lieu of termination, Defendant violated its Equal Employment Opportunity Policy. The policy states that "[e]mployment decisions involving associates of Saint Mary's . . . will be made on the basis of individual merit, skill and qualification." ECF No. 9 Ex. B at 0435. By not considering Plaintiff for anger management classes, Defendant did not consider his individual merit, skill and qualification even though Defendant characterized Plaintiff as "one of the best nurses."  An employer's failure

1:10-cv-12835-TLL-CEB   Doc # 15   Filed 11/01/11   Pg 21 of 23   Pg ID 471

to follow its policies can also constitute relevant evidence of pretext. *DeBoer v. Musashi Auto Parts*, 124 F. App'x 387, 394 (6th Cir. 2005).

In reply, Defendant emphasizes that the documented reason for terminating his employment included intimidating and coercive behavior towards staff members in violation of St. Mary's Equal Opportunity Policy. Plaintiff's behavior caused his co-workers to be frightened and file complaints for abusive and assaultive behavior.  St. Mary's Equal Opportunity Policy provides that, along with consideration of individual merit, skill and qualification, it will consider factors such as prior job "performance, attitude, [and] ability to work with others" in making decisions.  ECF No. 9 Ex. A at 435. Plaintiff's argument that pretext is established by his good clinical skills is contrary to the law which provides that merely because an employee does some things well, it does not mean that any other reasons justifying his termination constitute a pretext for discrimination. *Koval v. Dow Jones & Co.*, 86 F. App'x 61 (6th Cir. 2004). This is especially true when a nurse has shortcomings in important areas such as an inability to get along with his nursing team, supervisor, patients and their families.

In the course of its investigation, Defendant also interviewed a male EMT, Aaron Brown, who witnessed Plaintiff's misconduct. The descriptions of the events provided by Mr. Brown and the female staff were consistent, and Mr. Hunt determined that these descriptions were more credible than Plaintiff's account of the incident. Plaintiff also has not provided evidence of the ten allegedly comparable female employees who received anger management as opposed to termination for using obscene language, nor has he provided any evidence that these employees, like Plaintiff, engaged in intimidating and coercive misconduct resulting in formal abuse and assault complaints.

However, St. Mary's honest belief in its proffered non-discriminatory reason for Plaintiff s

-21-

discharge is fatal to Plaintiff's pretext argument even if St. Mary's reason may have been incorrect. *Majewski v. Auto. Data Processing, Inc.*, 274 F.3d 1106, 1117 (6th Cir. 2001). Plaintiff has advanced no evidence to rebut St. Mary's evidence that it made an honest, reasonably informed and considered decision, based on its investigation, that Plaintiff engaged in the intimidating and coercive behavior that caused emergency department personnel to file abuse/assault complaints. Even though St. Mary's references Plaintiff's disciplinary history in its reasons for his termination does not, in turn, result in its ultimate decision to terminate Plaintiff's employment because of his obscene language and intimidating and coercive behavior.

### D.    Plaintiff's claim for wrongful termination under Michigan law

Defendant's motion also challenges Plaintiff's wrongful termination claim under Michigan law. However, because Defendants are entitled to summary judgment on Plaintiff's Title VII claim, the Court will decline to exercise jurisdiction over Plaintiff's state law claims. *See United Mine Workers v. Gibbs*, 383 U.S. 715, 726 (1966); *Washington v. Starke*, 855 F.2d 346, 351 (6th Cir. 1988) ("It is a clear rule of this circuit that if a plaintiff has not stated a federal claim, his pendant state law claims should be dismissed.").

### IV.    Conclusion

Accordingly, Defendant's motion for summary judgment (ECF No. 9) is **GRANTED**.

It is further **ORDERED** that Plaintiff's Title VII wrongful termination claim is **DISMISSED WITH PREJUDICE**.

It is further **ORDERED** that jurisdiction is **DECLINED** over Plaintiff's state law claim.

s/Thomas L. Ludington
THOMAS L. LUDINGTON
United States District Judge

Dated: November 1, 2011

-22-

**PROOF OF SERVICE**

The undersigned certifies that a copy of the foregoing order was served upon each attorney or party of record herein by electronic means or first class U.S. mail on November 1, 2011

s/Tracy A. Jacobs
TRACY A. JACOBS